UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN. SOUTHERN DIVISION

| | |
|---|---|
| PARAGON 28, INC., <br><br> Plaintiff, <br><br> v. <br><br> **NATHAN SCHIPPER** <br><br> and <br><br> **SCHIPPER, INC.,** <br> Defendants. | Case No. 19-cv-10838-MFL-MKM |

| | |
|---|---|
| CARL F. JARBOE (P33509) <br> THE JARBOE LAW FIRM, PLC <br> Attorneys for Plaintiff <br> 18720 Mack Avenue, Suite 240 <br> Grosse Pointe Farms, MI 48236 <br> (313) 821-2600 <br> cfjarboe@jarboelawfirm.com <br><br> ABRAHAM SINGER (P23601) <br> LAW OFFICES OF ABRAHAM SINGER, PLLC <br> Attorneys for Plaintiff <br> 30833 Northwestern Hwy., Suite 120 <br> Farmington Hills, MI 48334 <br> (248) 626-8888 <br> asinger@singerpllc.com | BARBARA H. KRAMER (P49318) <br> JOSEPH M. WEST (P69566) <br> KRAMER & KRAMER LLP <br> Attorneys for Defendants <br> 24 Frank Lloyd Wright Dr., Lobby D2000 <br> Ann Arbor, MI 821-1055 <br> (734) 821-1055 <br> bkramer@kramerandkramer.com <br> jwest@kramerandkramer.com |

## FIRST AMENDED COMPLAINT

NOW COME Plaintiff Paragon 28, Inc., by and through its attorneys The Law Offices of Abraham Singer, PLLC and The Jarboe Law Firm, PLC, and for their First Amended Complaint, state as follows:

1. Plaintiff, PARAGON 28, INC., is a Colorado corporation authorized to do business in the State of Michigan, with its registered offices in the City of Grosse Pointe Farms, County of Wayne, State of Michigan.

2. Defendant NATHAN SCHIPPER is an individual, of majority age, a resident of the Dakota Dunes, South Dakota, conducts business with Plaintiff in Michigan, and has consented to personal jurisdiction and venue in Wayne County, Michigan.

3. Defendant SCHIPPER, INC. is a South Dakota corporation with its principal office in Dakota Dunes, South Dakota, conducts business with Plaintiff in Michigan, and has consented to personal jurisdiction and venue in Wayne County, Michigan.

4. This matter is a business or commercial dispute which seeks equitable relief, among other remedies.

## JURISDICTION

5. The amount in controversy is in excess of $75,000, exclusive of interest and cost.

6. This Court has original jurisdiction over this action based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a).

7. Plaintiff PARAGON 28, INC. is a Colorado corporation with its registered offices in Wayne County, Michigan.

8. Defendant SCHIPPER, INC. is a South Dakota corporation with its principal place of business in Dakota Dunes, South Dakota.

9. Defendant NATHAN SCHIPPER is a resident of Dakota Dunes, South Dakota.

10. Plaintiff seeks a judgment in this matter in an amount in excess of $850,000.00, which exceeds the jurisdictional threshold of $75,000.00 set forth in 28 U.S.C. § 1332(a). *See* 28 U.S.C. § 1446(c)(2)

## VENUE

11. Venue is proper in this Court pursuant to 28 U.S.C. 1391 in that the parties conducted business in the Eastern District of Michigan.

## COUNT I
## BREACH OF CONTRACT

12. Plaintiff incorporates by reference all of the allegations set forth in paragraph 1 through 11 above of this Complaint as if the same were more fully stated herein.

13. Plaintiff is a developer and supplier of innovative surgical products for the foot and ankle market.

14. Defendants, NATHAN SCHIPPER and SCHIPPER, INC., are independent commissioned sales agents for Plaintiff and were parties to the Sales Agency Agreement, attached as Exhibit 1.

15. As Plaintiff's sales agents, Defendants were made privy to Plaintiff's Confidential Information and Trade Secrets and attended Plaintiff's highly confidential sales training sessions.

16. The terms of the sales agency relationship and the attendant commission structure are governed by the written Sales Agent Agreements, including Exhibit 1, which are in the possession of Defendants.

17. Pursuant to said Agreements, Defendants represented and warranted that they had disclosed in writing on Exhibit C to their Sales Agent Agreements all non-Plaintiff products that they intended to carry during the terms of the Agreements.

18. Pursuant to said Agreements, Defendants represented and agreed not to carry any non-Plaintiff products lines other than those of Acumed, LLC and Tornier, Inc. and such lines were identified on Exhibit C of the Sale Agents Agreements. Specifically, Exhibit C Provides:

> The non-P28 products which Sales Agent may carry during the Term, as referenced in Paragraph 4 of the Sales Agent Agreement, are Accumed and Tornier (upper extremity products only). These may be carried only through any other representative or through Sales Agent itself. Mike Woodis' territory for such products is limited to his current territory of: Nebraska counties of: Adams, Arthur, Blaine, Boone, Brown, Buffalo, Chase, Cherry, Clay, Custer, Dawson, Deuel, Dundy, Fillmore, Franklin, Frontier,

Furnas, Garden, Garfield, Gosper, Grant, Greeley, Hall, Hamilton, Harlan, Hayes, Hitchcock, Hooker, Howard, Kearney, Keith, Keya, Paha, Lincoln, Logan, Loup, McPherson, Merrick, Nance, Nuckolls, Perkins, Phelps, Red Willow, Rock, Saline, Seward, Sheridan, Sherman, Thomas, Valley, Webster, Wheeler, and York only.

19. Said representations were made by Defendants in order to induce Plaintiff to pay to Defendants higher commission rates for the sale of Plaintiff's products.

20. Pursuant to said Agreements, Defendants agreed that breach of such representations would result in a retroactive reduction of Defendants' commissions by a 10% rate.

21. Defendants failed to disclose that they covertly carried products for Additive Orthopedics, LLC, Skye Biologics Inc., REM Systems Ltd., Extremity Care, LLC, and Cartiva, Inc.

22. The failure to disclose the secret carrying of competing product lines was done in order to wrongfully convert unearned commissions from Plaintiff.

23. Since January 1, 2017, Defendants have converted over $646,866.54 in unearned commissions.

24. Plaintiff has been damaged by overpaying commissions to Defendants in an amount which exceeds $646,866.54.

25. The Sales Agents Agreements contain the following non-compete provisions:

> Sales Agent had identified on Exhibit C all non-P28 products which it intends to carry during the Term. Sales Agent, including all of its representatives and employees, shall not carry any other non-P28 products in the Territory or outside of the Territory
>
> ***
>
> For one year following termination, Sales Agent, its sales representatives, and its employees shall not participate in the solicitation of sales, provide technical assistance, or provide support for any products that P28 deems may be directly or indirectly

competitive with P28's Products, other than those identified on Exhibit C, to any person or entity in the Territory…"

26. The "Territory" described in Exhibit A to the Sales Agent Agreements consist of:

**Illinois County of:**

Jo Daviess

**All Counties in the State of Iowa**

**Minnesota Counties of:**

Big Stone, Lac qui Parle, Lincoln, Lyon, Murray, Nobles, Pipestone, Rock, Yellow Medicine

**All Counties in the State of Nebraska**

**South Dakota Counties of:**

Beadle, Bob Homme, Brookings, Brown, Butte, Clark, Clay, Codington, Custer, Davison, Day, Deuel, Douglas, Fall River, Grant, Hamlin, Hanson, Harding, Hutchinson, Kingsbury, Lake, Lawrence, Lincoln, Marshall, McCook, Meade, Miner, Minnehaha, Moody, Pennington, Perkins, Roberts, Sanborn, Shannon, Spink, Turner, Union, Yankton

27. Defendants are in breach of the non-competition provisions in the Sales Agreement due to the selling of the undisclosed competitive product lines referenced above.

28. Plaintiff is suffering damages as Defendants are using Plaintiff's Confidential Information and Trade Secrets, including customer information, product pricing, and marketing strategies, to sell competing products to Plaintiff's customers and Plaintiff is losing sales that would otherwise have been made through Defendants.

29. Pursuant to the Sales Agreement, Plaintiff is entitled to recover its reasonable legal fees.

WHEREFORE, Plaintiff prays that this Honorable Court enter its judgment in favor of Plaintiff and against the Defendants in an amount in excess of $75,000 as determined by the proofs,

issue its preliminary and permanent injunctions preventing Defendants from competing in the Territory and from using Plaintiff's Confidential Information and Trade Secrets, and award Plaintiff its cost, interest, and reasonable attorney fees so wrongfully incurred in having to bring this action.

## COUNT II
## INJUNCTIVE RELIEF

30. Plaintiff incorporates by reference all of the allegations set forth in paragraphs 1 through 29 of this Complaint as if the same were more fully stated herein.

31. The Sales Agents Agreements expressly provide that Plaintiff shall be entitled to injunctive relief in the event of breach.

32. Injunctive relief is also proper given that Defendants actions will cause, among other damage, loss of goodwill and loss of future customers which constitutes an imminent threat of irreparable harm for which there is no adequate remedy at law.

WHEREFORE, Plaintiff prays that this Honorable Court enter a preliminary injunction and a permanent injunctions enjoining Defendants from competing in the Territory, using Plaintiff's Confidential Information and Trade Secrets, defaming the reputation of Plaintiff, or any other actions which this Court finds is a basis for injunctive relief.

## COUNT III
## CONVERSION

33. Plaintiff incorporates by reference all of the allegations set forth in paragraphs 1 through 32 of this Complaint as if the same were more fully stated herein.

34. The concealment of additional non-Plaintiff product lines was done to in order to wrongfully convert unearned commissions from Plaintiff.

35. Defendants have wrongfully converted at least $646,866.54 in unearned commissions.

36. Pursuant to MCL 600.2919a, a person damaged by another person's conversion is entitled to recover three times the amount of actual damages sustained, plus cost and reasonable attorney

fees. This remedy is in addition to any other right or remedy that the person may have at law or otherwise.

37. Pursuant to MCL 600.2919a, Plaintiff is entitled to recover at least $1,940,599.52 from Defendants, NATHAN SCHIPPER and SCHIPPER, INC., plus costs and reasonable attorney fees.

WHEREFORE Plaintiff, PARAGON 28, INC. prays that this Honorable Court enter its judgment in favor of Plaintiff and against Defendants, NATHAN SCHIPPER AND SCHIPPER, INC., in the amount of at least $1,940,599.52, together with interest thereon since the date of the filing of the Complaint together with Plaintiff's costs and reasonable attorney fees.

## COUNT IV
## CONVERSION OF PRODUCTS

38. Plaintiff incorporates by reference all of the allegations set forth in paragraph 1 through 37 of this Complaint as if the same were more fully stated herein.

39. Prior to April 1, 2019, the date Defendants resigned as a sales agent for Plaintiff, certain of Plaintiff's products were consigned to Defendants.

40. That Defendants have converted these products which have a value of over $130,000 and continues to either retain these products or has sold these products to third parties without paying Plaintiff for them.

41. As a result of the above actions, the Defendants are obligated to pay Plaintiff at least $130,000.

42. In the alternative, pursuant to MCL 600.2919a, Plaintiff is entitled to recover at least $390,000 from Defendants, NATHAN SCHIPPER and SCHIPPER, INC., plus cost and reasonable attorney fees for conversion of Plaintiff's product.

WHEREFORE Plaintiff, PARAGON 28, INC. prays that this Honorable Court enter its judgment in favor of Plaintiff and against Defendants, NATHAN SCHIPPER AND SCHIPPER, INC.,

in the amount of at least at least $390,000, together with interest thereon since the date of the filing of the complaint together with Plaintiff's costs and reasonable attorney fees.

Dated: April 26, 2019

LAW OFFICES OF ABRAHAM SINGER, PLLC
Attorneys for Plaintiff

_____
Abraham Singer (P23601)
30883 Northwestern Highway, Suite 120
Farmington Hills, Michigan 48334
(248) 626-8888
asinger@singerpllc.com

THE JARBOE LAW FIRM, PLC
Attorneys for Plaintiff

_____
Carl F. Jarboe (P33509)
18720 Mack Avenue, Suite 240
Grosse Pointe Farms, MI 48236
(313) 821-2600
cfjarboe@jarboelawfirm.com

## PARAGON 28, INC.
## SALES AGENT AGREEMENT

This Sales Agent Agreement ("Agreement") is made between Paragon 28, Inc., 4B Inverness Court East, Suite 280, Englewood, CO 80112 ("P28") and both Nathan Schipper and Schipper, Inc., 451 East Sawgrass Trail, Dakota Dunes, SD 57049 (collectively "Sales Agent").

1. P28 hereby appoints Sales Agent as P28's independent sales agent to sell P28's products, as P28 may from time to time in its discretion make available ("Products"), in the territory listed on exhibit A ("Territory"). Sales Agent shall not solicit orders for Products outside of the Territory. This right is subject at all times to the continued effectiveness of the Products and the clearance and approval of the Food and Drug Administration and all other applicable regulatory authorities.

2. The term of this agreement ("Term") begins on January 1, 2019 and terminates on December 31, 2019 unless terminated earlier as provided herein. The parties may extend the Term only by mutually signed written agreement.

3. Monthly sales quotas ("Quota") are set forth on exhibit B. Quotas are based upon "Net Invoice Price," which term means the customer's invoice price less potential rebates and actual returns. Customer unearned expired rebates are credited to Sales Agent for commissions and Quota achievement effective at time of expiration, generally December 31st. The failure of Sales Agent to meet any Quota during any month permits P28 at its discretion to terminate this agreement early at any time. Such failure also permits P28 at its discretion to modify the Territory.

4. Sales Agent shall use its best efforts to promote, demonstrate, and sell the Products on a face-to-face basis in an end-user environment. Sales Agent shall provide the highest quality service and technical support to customers. Sales Agent shall promote the goodwill, name, and interest of P28 and the Products. Sales Agent shall ensure that each customer is provided with knowledge of all Product support resources, including the P28 telephone number, P28 general e-mail (info@paragon28.com), P28 approved Products training courses, P28 literature, P28's website (www.paragon28.com), and any and all other P28 information which a customer may reasonably need. Sales Agent shall carry out its obligations under this Agreement vigorously and aggressively. Sales Agent has identified on exhibit C all non-P28 products which it intends to carry during the Term. Sales Agent, including all of its representatives and employees, shall not carry any other non-P28 products either in the Territory or outside of the Territory. Breach shall result in a reduction in commissions, as reflected on exhibit D, from the date of breach, may be considered conversion of commissions under Michigan law, and may result in early termination of this Agreement.

5. Sales Agent is an independent contractor, may not act for, bind, or commit P28, and shall conduct all of its business in its own name and in such manner as it may see fit in compliance with this Agreement. All of Sales Agent's current sales representatives and employees are identified on exhibit E, including home address, cell phone number, and email address. On or before the 3rd business day of each month, Sales Agent shall certify in writing its then-current list of sales representatives and employees including above contact information. Failure to timely so certify shall result in a delay in payment of commissions equal in length to the delay in submitting


EXHIBIT 1

this required certification. All new sales representatives and employees must be approved by P28 prior to soliciting sales of the Products. Such approval is at P28's discretion. All of Sales Agent's sales representatives and employees shall comply with the terms of this Agreement and shall execute the agreement attached as exhibit F. Sales Agent's sales representatives and employees shall attend training seminars or meetings sponsored by P28 at P28's request and Sales Agent's cost.

6. P28 shall have no obligation to compensate or pay applicable taxes for or provide employee benefits of any kind (including contributions to government-mandated employment-related insurance and similar programs) to Sales Agent or any other person employed or retained in any manner by Sales Agent. Sales Agent agrees to hold harmless, defend, and indemnify P28 for the payment of all such taxes and benefits.

7. Sales Agent may identify itself as an authorized representative of the Products. Such identification shall not confer on Sales Agent any ownership interest in P28 trademarks, any proprietary technology, or any right to continue such identification beyond the Term. Sales Agent shall use P28's trademarks, service marks, logos, or slogans only with prior approval of P28. Sales Agent shall not copy, reverse engineer, disassemble, or modify the Products or grant any other person or entity the right to do so.

8. Sales Agent's compensation shall be based on the schedule shown on exhibit D. There shall be deducted from compensation the amounts set out in this Agreement, the amounts set out in P28 policies and procedures, and the Great Plains allocation.

9. Sales Agent shall not offer discounts greater than 25% off current year list price without the prior written approval of P28.

10. Promptly following surgery, Sales Agent shall complete and submit to P28 Delivered Order Forms, available on Great Plains, and account for the use of any devices (implanted, otherwise used in conjunction with a surgical procedure such as disposable, or wasted). Sales Agent and all of Sales Agent's sales representatives and employees shall each possess a Wi-Fi enabled iPad with P28 minimum recommended specifications as updated from time to time. Sales Agent shall provide to P28 order forecasts upon request.

11. Sales Agent must submit a purchase order (a commitment in writing from the purchaser to purchase the Products) for each invoice in accordance with the policies and procedures established by P28 in order to receive a commission. All purchase orders must be forwarded to P28 upon receipt by Sales Agent without delay. All purchase orders are subject to acceptance by P28 at its discretion. Payment of Sales Agent's commissions will generally be made on or before the last day of the month following the month in which the purchase order is accepted by P28 unless otherwise provided herein. Commissions are not earned, however, until the customer pays for the Product. Commissions paid in advance of being earned are subject to repayment by Sales Agent to P28. Commissions advanced on invoices that remain unpaid after 180 days will be deducted from the next commission statement and from the then-current month sales figures toward Quota. The commissions will then be paid following payment of the invoice and the sale shall then be credited to the then-current month sales Quota. Sales Agent must obtain completed credit applications from new customers. Customers with poor credit history or without

a completed credit application may be placed on Credit Hold. Credit sales should not be made to customers on Credit Hold. No commissions will be advanced on sales to Credit Hold customers and such sales shall not be counted toward Quota until paid. In the event of failure of a Credit Hold customer to pay for Product on or before the end of the month following the sale, Sales Agent shall be charged the lost-inventory price of the Product. P28 reserves the right not to pay commissions on large orders until payment is received from the customer. P28 shall not be liable to Sales Agent for any loss caused by non-acceptance of orders, failure to deliver products, delays in making shipments, or failure of customer to pay for Product.

12. P28 shall not reimburse Sales Agent for any expenses unless otherwise provided herein or agreed by the Parties in writing. P28 shall pay for Priority Overnight Shipping of Product at its expense. If Sales Agent requests any other shipping method, through no fault of P28, then Sales Agent shall pay 50% of the additional cost of the other shipping method.

13. Upon termination of this Agreement or reduction in Territory, Sales Agent shall earn commissions on orders placed through Sales Agent in the Territory prior to such termination or Territory reduction but only if P28 receives a purchase order by the end of the month following termination or Territory reduction and after P28 receives payment.

14. Sales Agent shall immediately inform P28 of any expired or defective Product, surgical anomalies, complaints, or other problems relating to the Product pursuant to policies and procedures established by P28. If Sales Agent believes that there is expired or defective Product under Sales Agent's control, Sales Agent shall not deliver the affected Product to any customer. P28 does not warrant, expressly or implied, the performance of any of the Products.

15. Sales Agent shall provide customers with information, as instructed by P28, concerning the limited P28 warranties. EXCEPT FOR THE WARRANTIES EXPRESSLY STATED IN THIS AGREEMENT, NO OTHER WARRANTY IS EXPRESSED OR IMPLIED. P28 SPECIFICALLY DISCLAIMS THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. P28 shall not be liable for any lost profits or indirect, special, incidental, or consequential damages.

16. Sales Agent shall not directly or indirectly make any representation, statement, or disclosure of a material fact relating to or affecting P28's interests or Products that is deceptive, misleading, incomplete, or false in form or content. Any use of the P28 brand or Products on social media shall comply with this requirement and should be carefully reviewed. Sales Agent may consult with P28's Compliance Department for review prior to such postings. Sales Agent shall at all times work cooperatively with P28 personnel and ensure that all of Sales Agent's employees and representatives work cooperatively with P28.

17. Sales Agent and all of its principals, employees, agents, and representatives shall not engage in unlawful inducement; for purposes of this Agreement, "unlawful inducement" shall mean the prohibitions of the federal Anti-Kickback Statute and any other applicable state Anti-Kickback statutes. Additionally, Sales Agent and all of its principals, employees, agents, and representatives shall comply with all other applicable federal, state, and local laws and regulations in the solicitations of sales and provision of services hereunder including those regulations promulgated by the Food & Drug Administration, the Health Insurance Portability and

3

Accountability Act of 1996 as amended, the Physician Payment Sunshine Act provisions of the Patient Protection and Affordable Care Act, and all laws and regulations requiring Sales Agent to possess any license, permit, or other documentation in order to lawfully carry out its duties hereunder. Sales Agent shall keep itself aware of and in compliance with all changes in such laws and regulations. Sales Agent and all of its principals, employees, agents, and representatives shall comply with all applicable rules and regulations of P28, and the policies and procedures of P28 as are in effect from time-to-time.

18. Sales Agent shall abide by all policies and procedures of each hospital and health care institution where Sales Agent conducts business, including all vendor approval and background check requirements.

19. Sales Agent acknowledges that P28 has certain reporting requirements under the federal law commonly referred to as the Physician Payments Sunshine Act. On or before the 3rd business day of each month, Sales Agent shall certify in writing to P28 any monies expended by Sales Agent, its sales representatives, and/or its employees on Covered Recipients. Failure to timely so certify shall result in a delay in payment of commissions equal in length to the delay in submitting this required certification. Sales Agent shall comply with the specific information requests and process requirements for such reporting and shall indemnify, defend, and hold P28 harmless from any claim brought by any third party arising from any failure of Sales Agent, its sales representatives, and/or its employees to properly report hereunder. Sales Agent agrees to fully comply with P28's Physician Payment Sunshine Act Policy.

20. Sales Agent warrants that neither Sales Agent nor its owners, principals, employees, or representatives has been, and during the term of this Agreement shall not be: (i) sanctioned within the meaning of Social Security Act Section 1128A or any amendments thereof; (ii) convicted of violating the federal Stark law, federal False Claims Act, federal Anti-Kickback statute, federal Health Insurance and Portability Act provisions, federal Civil Monetary Penalties statute, or similar state laws, federal Health Care Fraud Statute, Foreign Corrupt Practices Act of 1977; or (iii) debarred, excluded, or suspended from participation in any federal or state health care program.

21. Sales Agent warrants that neither Sales Agent nor its owners, principals, employees, or representatives has had, and during the term of this Agreement shall not have, a complaint filed against it by any enforcement agency, which complaint alleges felony criminal acts of a violent nature; health care-related fraud, theft, or other financial misconduct; any offenses related to the delivery of items or services under Medicare, Medicaid, SCHIP, or other state health care programs; engaging in unlawful kickback arrangements; or any crime relating to the practice of medicine. Sales Agent authorizes P28 to conduct background checks on itself, its agents, and its employees, from time to time, including criminal and credit checks, as P28 may in its discretion determine to be reasonable necessary.

22. Sales Agent warrants that it has the legal capacity to enter into this Agreement and that no approvals of any other persons or entities are necessary. Sales Agent warrants that its duties hereunder will not result in a breach of any other agreement to which Sales Agent is a party or permit any party to sue P28.

4

23. P28 does not permit use of outside confidential, proprietary, or trade secret information. Sales Agent shall not use confidential, proprietary, or trade secret information of any other person or entity, not affiliated with P28, in the performance of its duties. Sales Agent shall immediately notify P28 in writing of any intentional or accidental use of outside confidential, proprietary, or trade secret information.

24. During the Term of this Agreement and all times after, Sales Agent shall not disclose, use, or profit from any technological information relating to the design or fabrication of the Products or other confidential information of P28, including P28 sales agent and representative names and contact information, business and marketing plans and strategies, customer lists, financial data, processes, software, inventions, know-how, designs, formulas, test data, and pricing strategies, or other subject matter pertaining to any business of P28, its customers, consultants, or licensees (collectively "Confidential Information and Trade Secrets"), other than strictly in accordance with the terms of this Agreement. Sales Agent shall treat all Confidential Information and Trade Secrets with the highest level of care and in no event with any less care than Sales Agent treats its own confidential information. The terms of this Agreement are confidential and shall not be disclosed to any third parties other than Sales Agent's legal and financial advisors and sales representatives and employees. Sales Agent shall not allow the removal or defacement of any confidentiality or proprietary notice placed on the Products or other items of Confidential Information and Trade Secrets.

25. P28 may provide Product to Sales Agent to be held under Sales Agent's supervision and responsibility ("Agency Inventory"). The Product sizes, types, classes, and quantities of Agency Inventory will be determined by P28 from time to time in its sole discretion in consultation with Sales Agent. Upon receipt, Sales Agent is responsible for verifying part numbers, lot numbers, and quantities received. Shipments directly from P28 will have accompanying packing slips. The contents of shipments received from other sales agents will be photographed by the shipping sales agent. All discrepancies shall be communicated by Sales Agent to P28 not later than 48 hours after receipt, or the contents of the shipment shall be deemed complete. Title to Agency Inventory shall remain with P28 until the Products have been sold to a customer. If Sales Agent desires to keep Agency Inventory at a customer location on consignment, then Sales Agent shall enter into a P28-approved consignment agreement with the customer. At P28's direction and expense, Sales Agent shall return to P28 or transfer to a third party all or specified portions of the Agency Inventory. Sales Agent shall photograph the contents of all shipments. Shipments shall remain the responsibility of Sales Agent until confirmation of receipt. Sales Agent will be notified by email from P28 of the list of any items received from Sales Agent. Sales Agent must notify P28 by return email within 48 hours of any discrepancy and provide the required shipping photograph or the email from P28 shall be deemed conclusive of the contents of the return. Sales Agent shall track the movement of all Agency Inventory and provide such records to P28 upon request. All inventory may be inspected by P28 at reasonable times upon advance notice. Upon demand by P28, Sales Agent shall pay to P28 the lost-inventory price of all unaccounted for Product.

26. P28 may terminate this Agreement prior to the scheduled termination upon any of the following:

    a. Failure of Sales Agent to meet a monthly sales quota.

5

b. Breach of this Agreement by Sales Agent.

c. Sales Agent files a petition in bankruptcy, files a petition seeking any reorganization, arrangement, composition, or similar relief under any law regarding insolvency or relief for debtors, or makes an assignment for the benefit of creditors; a receiver, trustee, or similar officer is appointed for the business or property of Sales Agent; any involuntary petition or proceeding under bankruptcy or insolvency laws is instituted against Sales Agent and not stayed, enjoined, or discharged within 60 days; or Sales Agent adopts a resolution for or undertakes to effect a discontinuance of its business or dissolution.

d. Any imposition of sanctions against Sales Agent within the meaning of Social Security Act Section 1128A or any amendments thereof; actions by Sales Agent, or owners, principals, employees, or sales representatives of Sales Agent, that result in a violation the federal Stark Law, federal False Claims Act, federal Anti-Kickback Statute, federal Health Insurance and Portability Act provisions, federal Civil Monetary Penalties Statute, or similar state laws, federal Health Care Fraud Statute or Foreign Corrupt Practices Act of 1977; or any debarment, exclusion or suspension of Sales Agent from participation in any federal or state health care program.

e. Any representation or warranty made by Sales Agent herein is found to be untrue or upon the making of any material misrepresentation by Sales Agent to P28 or to any customer or potential customer of any Products.

27. Upon termination, Sales Agent shall return to P28 all Products, Confidential Information, Trade Secrets, and other material furnished by P28. Sales Agent shall provide P28 with all customer lists and related sales information with respect to the prior sales of the Products.

28. Within five days after termination, Sales Agent shall audit all Products in its possession and provide accurate audit information to P28. P28 shall have 30 days to verify the audit. Sales commissions shall be held and not considered earned until verification of the audit is complete and all items returned. All unaccounted for Product shall be the responsibility of Sales Agent and deducted from commissions at the lost-inventory price. Sales Agent consents to such deduction. If the lost-inventory price of unreturned inventory exceeds the amount of unpaid commissions, Sales Agent shall make payment of the difference to P28 within 10 days of verification of audit. Sales Agent shall not suspend or set off any payment obligation to P28.

29. P28 may hold final commission payments for a period of up to 90 days after termination to cover customer returns and adjustments.

30. During the Term and for one year following termination, Sales Agent, its sales representatives, and its employees shall not solicit any of P28's employees or other sales agents or representatives for the purpose of being employed by or affiliated with Sales Agent, or by any third party in which Sales Agent or any of Sales Agent's family members is an owner, member, partner, employee, or other business affiliate.

31. For one year following termination, Sales Agent, its sales representatives, and its employees shall not participate in the solicitation of sales, provide technical assistance, or provide

6

support for any products that P28 deems may be directly or indirectly competitive with P28's Products, other than those identified on exhibit C, to any person or entity in the Territory or in any additional county in which Sales Agent, its sales representatives, or its employees solicited sales, provided technical assistance, or provided support on behalf of P28 in the twenty-four months preceding termination. In order to allow P28 to make such determination, Sales Agent shall notify P28 of any products it so intends to sell, assist, or support in the Territory or such additional counties during such period prior to undertaking any such action.

32. Sales Agent acknowledges that in the event of its breach, or threatened breach, of this Agreement, P28's remedies at law would be inadequate, and that the damages flowing from such breach would not be readily susceptible of being measured in monetary terms. Accordingly, P28 shall be entitled to immediate injunctive relief and may obtain a temporary order restraining any threatened or further breach without the necessity of posting bond or any other security and without the need of proving damages.

33. Sales Agent shall indemnify, defend, and hold harmless P28, any P28 Affiliate, and their shareholders, directors, officers, employees, agents, and assigns from and against any and all losses, claims, liabilities, costs, and expenses (including reasonable attorneys' fees) that such indemnified parties may incur based upon, arising from, or in any way related to a breach by Sales Agent of any of the terms, warranties, and representations in this Agreement or the negligence, gross negligence, or a willful act or omission by Sales Agent in the performance of its obligations hereunder.

34. This Agreement, together with all exhibits, contains the entire agreement between the Parties, and supersedes all prior agreements and understandings relating to the subject matter, whether oral or written. No changes, modifications, or additions to this Agreement shall be valid unless the same shall be in writing and signed by each Party.

35. If any provision of this Agreement is determined to be illegal or unenforceable, that provision shall be severed from this Agreement, and such severance shall have no effect upon the enforceability of the remainder of this Agreement.

36. Sales Agent may not, voluntarily or by operation of law, assign or otherwise transfer any of its rights or obligations under this Agreement without obtaining the prior written consent of P28, determined by P28 in its discretion. Subject to said restriction, this Agreement shall be binding upon and inure to the benefit of the Parties, their successors, and assigns.

37. No delay or failure to require performance of any provision of this Agreement shall constitute a waiver of that provision as to that or any other instance. Any waiver granted by a Party must be in writing and shall apply solely to the specific instance expressly stated.

38. All notices, requests, demands, and other communications under this Agreement shall be in writing and be delivered either by hand delivery with signature proof of receipt, by reputable overnight delivery service (*e.g.*, Federal Express, DHL) with signature proof of receipt, e-mail, or facsimile with appropriate electronic confirmation of receipt. Notice shall be deemed given to a Party when sent to the address listed for the Party above if sent as specified in this

section or otherwise deemed given when received. Either Party may change the address to which notices to such party are to be sent by giving the other Party written notice of such change.

39. None of the provisions of this Agreement shall be for the benefit of, or enforceable by, any third party beneficiary unless otherwise expressly set out herein or assigned by P28.

40. This Agreement shall be interpreted pursuant to the laws of the State of Michigan, without regard to its conflicts of law principles. Each Party submits to the exclusive jurisdiction and venue of the state and federal courts sitting in Wayne County, Michigan and waives any bond, surety, or other security that might be required of any other Party.

41. The Parties acknowledge that this Agreement has been negotiated in an arms-length transaction and no presumptions as relates to either Party shall be made with respect to the drafting of this Agreement.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement in multiple counterparts each of which constitutes an original for any and all purposes and all of which together constitute one and the same instrument.

Dated: 1/28/19

PARAGON 28, INC.
By: _____
Matthew L. Jarboe
Chief Commercial Officer

Dated: 1/7/2019

SCHIPPER, INC.
By: _____
Nathan Schipper
Its: President

Dated: 1/7/2019

_____
Nathan Schipper (individually)

8

PARAGON 28, INC.
SALES AGENT AGREEMENT

EXHIBIT A
TERRITORY

Sales Agent's Territory, as referenced in Paragraph 1 of the Sales Agent Agreement, is:

**Illinois County of:**

Jo Daviess

**All Counties in the State of Iowa**

**Minnesota Counties of:**

Big Stone, Lac qui Parle, Lincoln, Lyon, Murray, Nobles, Pipestone, Rock, Yellow Medicine

**All Counties in the State of Nebraska**

**South Dakota Counties of:**

Beadle, Bon Homme, Brookings, Brown, Butte, Clark, Clay, Codington, Custer, Davison, Day, Deuel, Douglas, Fall River, Grant, Hamlin, Hanson, Harding, Hutchinson, Kingsbury, Lake, Lawrence, Lincoln, Marshall, McCook, Meade, Miner, Minnehaha, Moody, Pennington, Perkins, Roberts, Sanborn, Shannon, Spink, Turner, Union, Yankton

9

PARAGON 28, INC.
SALES AGENT AGREEMENT

EXHIBIT B
QUOTA

Sales Agent's monthly sales quotas, as referenced in Paragraph 3 of the Sales Agent Agreement, are:

| | |
|---|---|
| January 2019: | $385,000 |
| February 2019: | $360,000 |
| March 2019: | $407,000 |
| April 2019: | $399,000 |
| May 2019: | $429,000 |
| June 2019: | $420,000 |
| July 2019: | $441,000 |
| August 2019: | $506,000 |
| September 2019: | $437,000 |
| October 2019: | $598,000 |
| November 2019: | $580,000 |
| December 2019: | $608,000 |
| | |
| Total for 2019: | $5,570,000 |

## PARAGON 28, INC.
## SALES AGENT AGREEMENT

### EXHIBIT C
### NON-P28 PRODUCTS

The non-P28 products which Sales Agent may carry during the Term, as referenced in Paragraph 4 of the Sales Agent Agreement, are Accumed and Tornier (upper extremity products only). These may be carried only through Sales Agent's current representative Mike Woodis and not through any other representative or through Sales Agent itself. Mike Woodis' territory for such products is limited to his current territory of: Nebraska counties of: Adams, Arthur, Blaine, Boone Brown, Buffalo, Chase, Cherry, Clay, Custer, Dawson, Deuel, Dundy, Fillmore, Franklin, Frontier, Furnas, Garden, Garfield, Gosper, Grant, Greeley, Hall, Hamilton, Harlan, Hayes, Hitchcock, Hooker, Howard, Kearney, Keith, Keya Paha, Lincoln, Logan, Loup, McPherson, Merrick, Nance, Nuckolls, Perkins, Phelps, Red Willow, Rock, Saline, Seward, Sheridan, Sherman, Thomas, Valley, Webster, Wheeler and York only.

11

## PARAGON 28, INC.
## SALES AGENT AGREEMENT

### EXHIBIT D
### COMMISSION SCHEDULE

Sales Agent's commission schedule, as referenced in Paragraphs 4 and 8 of the Sales Agent Agreement, shall be calculated as follows:

1.  Sales Agent will receive a commission rate of 20% of the Net Invoice Price of all Products sold in the Territory. In any calendar month in which Sales Agent's total sales meet or exceed 60% of the total Quota for the beginning of the Term to the end of said month, Sales Agent shall receive a 5% rate increase to 25% on all sales for the month. In any calendar month in which Sales Agent's total sales meet or exceed the total Quota for the beginning of the Term to the end of said month, Sales Agent shall receive a 10% rate increase to 30% on all sales for the month.

2.  Sales Agent shall not offer discounts greater than 25% off current year list price without the prior written approval of P28. Approved discounts over 50% shall lower Sales Agent's commission rate on each item sold at such discounts as follows:

| | |
|---|---|
| greater than 50% up to 55% discount: | 2.5% rate reduction. |
| greater than 55% up to 60% discount: | 5.0% rate reduction. |
| greater than 60% up to 65% discount: | 7.5% rate reduction. |

Approved discounts of over 25% for V92 Cellular Bone Matrix (P01-V92-0250 and P01-V92-0500) shall lower Sales Agent's commission rate as follows:

| | |
|---|---|
| greater than 25% up to 30% discount: | 2.5% rate reduction. |
| greater than 30% up to 35% discount: | 5.0% rate reduction. |
| greater than 35% up to 40% discount: | 7.5% rate reduction. |
| greater than 40% up to 45% discount: | 10.0% rate reduction. |
| greater than 45% up to 50% discount: | 12.5% rate reduction. |

For clarity, this means that a commission rate of 25%, subject to a 10% rate reduction, would become a commission rate of 15%.

3.  Commissions rates are subject to adjustment based upon Sales Agent's performance under P28's Asset Measure Policy.

4.  As provided in Paragraph 4 of the Sales Agent Agreement, Sales Agent, including all of its representatives and employees, shall not carry any non-P28 products either in the Territory or outside of the Territory which are not set forth on exhibit C. Breach of this provision may result in termination, shall lower Sales Agent's commission rate on each item sold from and after the date of the breach by a 10% rate reduction, and may be considered conversion of commissions under Michigan law.